DANIEL G. KNAUSS
United States Attorney
District of Arizona

HOWARD D. SUKENIC
Assistant U.S. Attorney
Arizona State Bar No. 011990
United States Attorney's Office
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Howard.Sukenic@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>        v.<br><br>Angelo S. Tullo (01),<br><br>            Defendant. | CR 04-0539-PHX-MHM<br><br>**RESPONSE TO DEFENDANT'S OBJECTIONS, GOVERNMENT'S OBJECTIONS TO DRAFT PRESENTENCE REPORT** |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE DRAFT PRESENTENCE REPORT:**

The government has reviewed the defendant's objections and responds as follows:

**The Offense Conduct:**

Paragraph 10 - The government, in settling this complex matter, has agreed that the victim-investor representatives of the successor corporation, NHC, defined the loss, for advisory Guideline sentencing computations, when they settled for cash and stock in Y.P. Net.[1] That amount is approximately 7.2 million dollars. The government however, disagrees with the

---

[1] The government disagrees with defendant Tullo that he was "solely" responsible for paying the investors. Tullo may have arranged for the bulk of the payment (others such as Guttentag paid much smaller amounts) however, the government directs the Court to the attachment to the plea agreement titled "Asset Purchase Agreement." The parties to the agreement are NHC and an entity called Morris & Miller, Ltd. Defendant Tullo has always maintained to government investigators that he had no interest or control in this entity.

defendant as to the amount of investor funds that were obtained during the ABF portion of the conspiracy. The government supports the figure of approximately 19.2 million dollars as stated in the Draft Presentence Investigation Report. To assist this Court, the government provides a a summary of the funds traced (attached hereto and incorporated for reference as Exhibit A). The first page traces $36,175,491 from the ABF accounts and disbursements from those accounts. Some disbursements, such as "Investor Distributions" are "Ponzi" payments. Also, as a good illustration of how funds were distributed to promote the ongoing illegal enterprise and re-pay earlier Factors who had a relationship with HVAC, the government directs the Court to the items referencing "HVAC" payments. The first summary of the second page of Exhibit A also details funds diverted to defendants', primarily Tullo but also Monteleone, for their personal benefit. [2]

Paragraph 11 - The government has no credible evidence that defendant Monteleone acted as Vice President or President of HVAC. [3] Defendant Tullo's implied assertions that he did not maintain control of HVAC are simply not true. The government again refers this Court to Exhibit B, page ACC06585, where defendants' Tullo and Monteleone both assert ownership of HVAC. Craig Brosnan and Margaret Molter may have incorporated HVAC but they were nominees. Defendant Tullo had an active role in this "business" and the resultant fraudulent activity. As an additional example, the government submits a cover sheet and a portion of a facsimile prepared by co-defendant Wolfe for defendant Tullo (See Exhibit C attached hereto and incorporated for reference). This exhibit, an application with a Factor, Commerce Funding, contains an attestation by defendant Tullo acting as secretary of HVAC.

---

[2] This summary was prepared by Special Agent Angela Wong of the I.R.S. and is considered work product. Special Agent Wong has met with defense counsel to review these figures. As there is still a disagreement between the government and the defendant, the government will have Special Agent Wong present at sentencing to answer any questions this Court my have about the financial summaries provided.

[3] The strongest credible evidence that the government has of defendant Monteleone's employment relationship with HVAC comes from defendant Monteleone himself. The government refers this Court to page ACC06585 of Exhibit B, attached hereto and incorporated for reference. Here, defendant Monteleone, in talking to potential investors, refers to HVAC as being a heating and air conditioning supply company that he and defendant Tullo owned.

Paragraph 16- The government disagrees with defendant Tullo's position. The objective of the formation of ABF was to create fictitious clients and fictitious debtors in such a manner that it would attract substantial interest from investors and thereafter, substantial investment capitol. These investors were given the expectation that these investment funds were used to factor debts of established and credit worthy companies. Both purported customers of ABF and purported debtors were fraudulently created, many carried over from the HVAC portion of the criminal activity. Therefore, it is inconceivable to believe that ABF was innocently created and simply created some fraudulent accounts. The evidence in this case belies that assertion.

Paragraphs 17 and 18: The government will not belabor this point. Both Tullo and Monteloene, save for one solicitation by co-defendant Nova, were responsible for making the solicitations to investors. For example, as evidenced in Exhibit B, on March 22, 1999, defendants's Tullo and Monteleone gave a presentation relating to ABF's factoring investment program to the board members of The American Foundation for Charitable Support, Inc. ("AFCS") and The American Support Foundation ("ASF"). This presentation resulted in the generation of approximately $6,954,000 of investor funds into the ABF program.

Paragraph 19: The government disagrees with the defendant's accounting. Exhibit A reflects Investor Distributions, Eric Noble-loan repayments and commission, and Broker/Agent Commission. The sum of these amounts is $4,367,966.20. The government submits that these distributions were the result of "Ponzi" payments and the source was not from legitimate factoring.

Paragraph 20: The government refers this Court to paragraph 10. The agreed upon loss amount, for Guideline sentencing computations, is 7.2 million dollars.

Paragraphs 22 and 23: The government does not agree with the defendant that these factual allegations should be removed. These facts can be considered under U.S.S.G. §1B1.3 as relevant conduct.

Paragraph 28: The government disagrees with defendant's objection and directs this Court to the governments answers contained in Paragraphs 10, 22, and 23.

**Culpability Assessment:**

Paragraph 29 - The government has no credible evidence that defendant Monteleone directed defendant Tullo or that defendant Tullo worked for defendant Monteleone. The government agrees that the plea agreement limits defendant Tullo's direct supervision to co-defendant's Guttentag, Wolfe, and Molter. The government has no information regarding the last sentence of the defendant's objection as the investigation did not encompass that particular time period. [4/]

Paragraph 31: No objection other than the government is unclear as to the exact timing of co-defendant Nova's exclusion from ABF other than to state it was very early in the onset of the corporation.

Paragraph 32: The government disagrees with defendant's objection. The defendant's position is also confusing as he did agree that he supervised and controlled, among others, co-defendant Guttentag.

Paragraph 35: The government refers this Court to the responses contained in paragraphs 10,17,22, and 23. Furthermore, although the defendant arranged for a settlement prior to the indictment being filed in the instant matter, he did so only after a Judgement was entered against him, among others, in a civil trial based on many of the same facts and allegations. Also, the defendant settled knowing that there was a criminal investigation pending and used that settlement as an incentive for the investor-victims to cause the letter, attached as exhibit B to defendant's plea agreement, to be issued to the government stating, among other things, that "NHC no longer wants to be involved in any prosecution related to Tullo and ABF."

---

[4/] The government's investigation began in January of 2000.

**Financial Gain:**

Paragraph 37 - The government disagrees with defendant Tullo's assessment and submits Exhibit D, attached hereto and incorporated for reference, as a complete accounting of all funds that defendant Tullo improperly diverted for his use or benefit.  This figure is $990,584.38.

**Acceptance of Responsibility:**

The government believes that the defendant has been cooperative and deserves acceptance of responsibility.  The government moves this Court for a reduction of three offense levels pursuant to U.S.S.G. §3E1.1.

**Offense Level Computations:**

Paragraph 45: The government disagrees with defendant's assertion and refers this Court to the answers contained in Paragraph 37.

**More Than Minimal Planning and Sophisticated Means:**

Paragraphs 46 and 47:  The government provided evidence to the Presentence Writer who utilized this evidence in preparing the Draft Presentence Investigation Report.  The government does not believe that the defendant can sustain an objection to "double dipping" if the Court wishes to impose both enhancements.  The government however, pursuant to the plea agreement, takes no position and leaves it to the discretion of the Court as to whether these enhancements should be applied.

**Total Offense Level:**

The government submits defendant's total Offense Level is correctly computed if this Court accepts the Presentence Writers recommendations. [5]

**GOVERNMENT'S OBJECTIONS:**

The government does not have substantive objections.  However, the government wishes to clarify certain factual points as follows:

---

[5] The government will file a separate document containing the reasons for it's U.S.S.G. 5K1.1 recommendation.  The government, pursuant to the plea agreement, recommends a reduction of six Offense Levels.

1. Paragraph 6 should be corrected to reflect that all defendants were charged with participation in the Money Laundering Conspiracy and that only Tullo and Monteleone were charged with substantive Money Laundering counts.

2. Paragraph 10 should be corrected to reflect that defendants Tullo and Nova created the fraudulent accounts receivables in the "HVAC" portion of the conspiracy and as to the "ABF" portion of the conspiracy, only defendants Tullo and Monteleone solicited investors. [6/]

3. Paragraph 11 should be corrected to reflect that defendant Nova served as president of HVAC, removing the reference about defendant Monteleone as Vice President, and that the solicitation of investors was done by both defendants Tullo and Monteleone.

4. Paragraph 14 should be amended to state that "ABF was created *in part* to facilitate a payoff to the factor before the fraud was discovered."

5. Paragraph 30 should be amended to reflect that both Monteleone and Tullo solicited funds from investors.

6. Paragraph 32 should be amended to state that Guttentag created *investor* reports.

Respectfully submitted this 6th day of July, 2007.

DANIEL G. KNAUSS
United States Attorney
District of Arizona

S/ Howard D. Sukenic

Howard D. Sukenic
Assistant U.S. Attorney

---

[6/] Aside from an isolated solicitation by defendant Nova.

# CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David R. Appleton
8711 E. Pinnacle Peak Rd., #109
Scottsdale, Az. 85255

Michel B. Bernays
3839 N 3rd St., Ste 400
Phoenix, Az. 85012

Michael D. Kimerer
Kimerer & Derrick, P.C.
221 E. Indianola Ave.
Phoenix, Az. 85012

Marty Lieberman
3839 N 3rd St., Ste 400
Phoenix, Az. 85012

David C. Derrickson
3636 N. Central Ave., Suite 1050
Phoenix, Az. 85012

Jess A. Lorona
Ducar, Lorona & Parks
3003 N. Central Ave., Ste 1800
Phoenix, Az. 85012

Mark W. Nebgen
Senior U.S. Probation Officer
Sandra Day O'Connor Courthouse
401 W. Washington, Suite 260
Phoenix, AZ   85003


S/ Howard D. Sukenic
_____
HOWARD D. SUKENIC